2024 IL App (1st) 231141

No. 1-23-1141

Opinion filed June 20, 2024

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| BERTRAND BAYEG, Individually and on Behalf of Others Similarly Situated, | ) |
| | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) Cook County. |
| | ) |
| v. | ) No. 19 CH 8828 |
| | ) |
| THE ADMIRAL AT THE LAKE, | ) Honorable |
| | ) Alison C. Conlon, |
| Defendant-Appellant. | ) Judge, presiding. |

JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Justices Lampkin and D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, the Admiral at the Lake (Admiral), which is a senior living facility in Chicago, appeals from the circuit court's order granting class certification to plaintiff Bertrand Bayeg and 366 current and former employees of Admiral. Bayeg alleges that Admiral violated the Biometric Information Privacy Act (Act) (740 ILCS 14/1 *et seq.* (West 2016)) by requiring employees to use a timekeeping system called UltiPro Touchbase (UltiPro), which collected and analyzed employees' facial geometry without their knowledge or consent and without a policy for the

deletion of such data. On appeal, Admiral contends that the circuit court should not have granted class certification because (1) Bayeg has no claim against Admiral for violating the Act, (2) class members' damages are individualized, and (3) Bayeg is an inadequate class representative. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3                          A. The Act and Class-Action Lawsuits

¶ 4      The Illinois General Assembly enacted the Act in 2008 to codify individuals' "right to privacy in and control over their biometric identifiers and biometric identification." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 33. The Act defines a "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," but it excludes photographs (among other media) from that definition. 740 ILCS 14/10 (West 2016). The Act defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier." *Id.* However, "[b]iometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers," such as photographs.[1] *Id.*

¶ 5      Among other provisions, the Act requires a private employer that collects employees' biometric data to publish a policy for permanently deleting that data. *Id.* § 15(a). In addition, an employer who intends to collect employees' biometric data must provide a written disclosure that biometric data is being collected, set out the reason for doing so and the length of time for which biometric data will be retained, and obtain signed releases from employees authorizing the

---

[1]The Act differentiates between "biometric identifiers" and "biometric information." We use the term "biometric data" to refer to both concepts collectively, although that is simply for brevity and is not language the statute uses.

collection of biometric data. *Id.* § 15(b). A victim of a violation of the Act may sue and recover damages as set by the statute *Id.* § 20. A prevailing plaintiff may recover $1000 in statutory damages for each negligent violation of the Act and $5000 in statutory damages for each reckless or intentional violation. *Id.*

¶ 6    In recent years, the Act has given rise to class-action lawsuits involving employers' use of employees' biometric data such as fingerprints. See, *e.g.*, *Cothron v. White Castle System, Inc.*, 2023 IL 128004, ¶¶ 1-3; *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶ 1; *National Fire Insurance Co. of Hartford v. Visual Pak Co.*, 2023 IL App (1st) 221160, ¶¶ 8, 18. A court must certify a proposed class in order for a plaintiff to proceed with a class-action lawsuit. 735 ILCS 5/2-801, 2-802(a) (West 2016). A party seeking class certification must fulfill four requirements: (1) numerosity, or a class so large that joinder of all members is impracticable, (2) common questions of law or fact that predominate over any individual issues, (3) the adequacy of the class representative, and (4) that class certification is an appropriate method to resolve the litigation. *Id.* § 2-801; *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 125 (2005).

¶ 7                                    B. Procedural History of This Case

¶ 8                                         1. Initial Pleadings

¶ 9    In July 2019, Bayeg filed a class-action complaint against Admiral alleging that Admiral employed him as a certified nursing assistant from September 11, 2017, to January 4, 2019. During that time, Admiral required employees including Bayeg to scan their faces via UltiPro at the beginning and end of every shift, as well as when they took or returned from breaks. Admiral stored Bayeg and other employees' facial geometry and used it for comparison purposes. Admiral did not inform Bayeg or other employees of its purposes for collecting facial geometry, how long

it stored that data, or whether or when it would permanently delete the data. Bayeg did not sign a release allowing Admiral to collect or store his facial geometry. The complaint included one count alleging violation of section 15(a) and (b) of the Act.

¶ 10 In November 2019, Admiral filed a motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2016)). Relevant here, Admiral argued that UltiPro only took photographs of employees and section 10 of the Act excludes photographs from the definition of "biometric identifiers." Admiral attached an affidavit from its chief financial officer, who attested that UltiPro took photographs of employees, which Admiral used to verify an employee's identity by "look[ing] at a photo of an employee and see[ing] if the person punching in/out is the person who has that [employee identification] number." Admiral argued that this affidavit was an "affirmative matter" under section 2-619(a)(9) (*id.* § 2-619(a)(9)) that defeated Bayeg's claim pursuant to the "photographic exemption" of the Act. In response, Bayeg argued that Admiral's denial that UltiPro collected facial geometry was improper in a motion to dismiss. The circuit court denied Admiral's motion to dismiss, finding that Bayeg adequately pled that UltiPro collected facial geometry and that Admiral could not properly dispute that allegation in a motion to dismiss.

¶ 11 Discovery began in October 2020. In September 2021, Admiral filed affirmative defenses. Relevant here, Admiral averred that the Act does not apply to UltiPro because UltiPro "hardware does not have technological capabilities to capture, collect, store or otherwise obtain scans of facial geometry or biometric identifiers or biometric information," "Admiral only ever receives photographs of its employees," and "[p]hotographs are not 'biometric identifiers' or 'biometric information' under [the Act]." In addition, Admiral claimed that "any alleged 'facial recognition'

algorithm or 'scan of facial geometry' occurs on third party servers that are located outside of Illinois" and the Act "does not apply extraterritorially to conduct that occurs outside of Illinois." In December 2021, the court struck some of Admiral's affirmative defenses but allowed these two to stand.

¶ 12                                  2. Motion for Class Certification

¶ 13     In November 2022, Bayeg filed an amended version of the motion for class certification he initially filed with his complaint in 2019. The amended motion for class certification at issue asserted that Admiral required hourly employees to use UltiPro beginning on March 26, 2017. UltiPro had a built-in camera that took a photograph of an employee each time he or she clocked in or out.[2] UltiPro then transmitted the employee's photograph to a cloud-based server, where a facial recognition algorithm compared the photograph to a set of "training" photographs of the employee. The algorithm measured facial geometry from both sets of photographs based on "facial landmarks" such as length, width, height, distance between the eyes, nose, and mouth. The algorithm then compared the facial geometry from the training photographs to the data from the time clock photograph to determine whether the photographs matched. Admiral's chief financial officer learned about the Act in October 2017, but Admiral did not implement policies to comply with the Act until June 11, 2019.

¶ 14     With respect to the section 2-801 requirements, Bayeg argued that the class was sufficiently numerous because Admiral collected the facial geometry of 366 employees between March 2017 and June 2019. Bayeg contended that common questions of law and fact predominated because

_____

[2]Bayeg's description of UltiPro in his motion for class certification was based on deposition transcripts, affidavits, written discovery responses, and other materials produced in discovery.

every Admiral employee was required to use the same UltiPro timekeeping system and was subject to the same non-Act-compliant policies. Every class member's claim required resolution of the same issues, such as whether the data UltiPro collected qualified as "biometric identifiers," whether Admiral's policies complied with the Act, and the proper amount of statutory damages. Bayeg also argued that he adequately represented the proposed class because he was a member of the class, Admiral violated the Act with respect to him in the same way it violated the Act with respect to other employees, he sought the same statutory damages as every other member of the class, and he vigorously pursued the class's interests with the representation of experienced class-action attorneys. Finally, Bayeg contended that a class action was appropriate to resolve this litigation because, without class certification, Admiral employees would have to pursue numerous individual lawsuits or might not even know their rights under the Act had been violated.

¶ 15    In response, Admiral argued the UltiPro time clocks at Admiral's facility in Chicago did not collect facial geometry; they only took employees' photographs, which section 10 of the Act excludes. According to Admiral, any collection of facial geometry occurred on an UltiPro server in Georgia, where the Act has no extraterritorial force. Regarding the section 2-801 requirements, Admiral did not challenge numerosity or appropriateness. However, Admiral argued that damages were individualized because determining each employee's statutory damages required resolving "when a class member worked at The Admiral, when The Admiral violated [the Act], and The Admiral's culpability with respect to its actions toward each employee on individualized dates." In addition, Admiral contended that Bayeg was not an adequate class representative because his "deposition testimony show[ed] him to be passive, ignorant, ill-informed and nothing more than a figurehead for his counsel." Specifically, Admiral claimed that Bayeg's deposition revealed that

he had little to no understanding of how UltiPro worked; was not seeking monetary damages; and had no contact with other class members, no knowledge of Admiral's attempts to settle the case, and no opinion as to the value of the case.

¶ 16    The parties submitted voluminous exhibits in support of their memoranda on class certification. Relevant here, Bayeg attached an excerpt of an approximately 1200-page spreadsheet documenting every time Admiral employees used UltiPro. Admiral attached a longer version of the spreadsheet to its response. Additionally, the parties submitted Bayeg's deposition transcript.

¶ 17    At oral argument on the motion for class certification, Admiral contended that the "undisputed facts" showed that UltiPro's analysis of facial geometry occurred on a server in Georgia, where the Act does not apply. When the court asked why this argument was "not more of a summary judgment issue," Admiral stated that "[i]t certainly will be tested on summary judgment" but insisted that class certification was inappropriate because "the evidence on the merits" showed that any potential Act violations did not occur in Illinois. Bayeg argued that whether UltiPro collected facial geometry and, if so, where that occurred were factual issues that did not prevent class certification. Bayeg also argued that he personally was seeking statutory damages of $1000 or $5000 per violation and that his deposition testimony that he was not seeking money damages was just an inartful way of expressing that he was seeking damages on behalf of the class as well.

¶ 18    The circuit court granted Bayeg's motion for class certification. The court found that
"[b]ased on the record evidence supporting the Motion, the merits and weight of which the Court does not now address at this certification stage, Defendant, The Admiral at the Lake (the "Admiral") is a senior living facility. During the pertinent time period, Admiral

required its hourly employes to scan their faces into web-enabled time clocks. The time clocks contained built-in cameras. The cameras took photographs of the employees each time they punched in and out of work for shifts or breaks. The photographs were transmitted to a cloud-based server. A facial recognition algorithm then compared the photographs to a training set of photographs of the employee to determine whether the results match."

¶ 19    With respect to the section 2-801 requirements, the court concluded that Bayeg satisfied numerosity and appropriateness. Regarding the commonality and predominance requirement, the court found that Bayeg's allegations raised "a common question of fact as to whether he and putative class members were required to use the same time clocks, which ultimately took their facial geometric data." Bayeg also raised

"common questions of law and fact as to whether Admiral acquired facial geometry data that compromises biometric information under [the Act]; informed [Bayeg] and putative class members in writing about the collection of said data; informed [Bayeg] and putative class members in writing about the purpose and length of term for the collection of said data; implemented a written, publicly-available policy establishing retention schedules and guidelines for permanently destroying said data; and whether these claimed violations were negligent or reckless."

The court rejected Admiral's argument that damages were individualized, explaining that damages were statutory and could be calculated with a formula. It noted that "there is already a spreadsheet from Admiral showing the times each putative class member had a purported face scan." The court also concluded that Admiral's extraterritoriality argument was a merits-based argument that could

not properly be resolved at the class-certification stage. The court cited *Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752 (2008), which we discuss further below, in support of that conclusion. Finally, the court found that Bayeg was an adequate class representative because his deposition established that "he has participated in all stages of the case; possesses a solid understanding of the underlying claim and his obligations to the putative class members; and communicates regularly with his attorneys." The court rejected Admiral's interpretation of Bayeg's deposition testimony as meaning that he was not seeking money damages.

¶ 20    Admiral filed a petition for interlocutory appeal, which we granted.

¶ 21                                    II. ANALYSIS

¶ 22    Admiral appeals pursuant to Rule 306(a)(8), which allows an interlocutory appeal "from an order of the circuit court denying or granting certification of a class." Ill. S. Ct. R. 306(a)(8) (eff. Oct. 1, 2020). Section 2-801 of the Code of Civil Procedure governs class certification and provides:

> "An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3) The representative parties will fairly and adequately protect the interest of the class.
>
> (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801 (West 2016).

The party seeking class certification must establish all four requirements. *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 167 (2005). In this appeal, Admiral challenges the second and third requirements, arguing that class members' damages are individualized and that Bayeg is an inadequate class representative. Admiral also contends that Bayeg has no cause of action against Admiral for violation of the Act.

¶ 23    "Decisions regarding class certification are within the sound discretion of the trial court and should be overturned only where the court clearly abused its discretion or applied impermissible legal criteria." *Avery*, 216 Ill. 2d at 125-26. "An abuse of discretion exists where no reasonable person would agree with the position of the trial court." *Brax v. Kennedy*, 363 Ill. App. 3d 343, 355 (2005).

¶ 24                               A. Cause of Action

¶ 25    The first issue is whether Bayeg has a cause of action against Admiral for violation of the Act. Admiral argues that Bayeg has no cause of action for two reasons, both of which are based on what Admiral describes as "[t]he undisputed record, after three years of exhaustive discovery." According to Admiral, discovery has established that UltiPro only took photographs of Admiral employees in Illinois and section 10 of the Act excludes photographs from the definition of "biometric identifiers" and, by extension, "biometric information." See 740 ILCS 14/10 (West 2016). Additionally, Admiral claims that discovery has shown that UltiPro's collection and analysis of facial geometry occurred in Georgia, where the Act does not apply. Bayeg maintains that the circuit court found that he had a viable Act claim when it denied Admiral's motion to dismiss and that the court did not need to revisit that issue at class certification.

¶ 26    Admiral's procedural approach to this case complicates our resolution of this issue. Admiral initially filed a motion to dismiss Bayeg's complaint, which the circuit court denied. Admiral then framed its "photographic exemption" argument as an affirmative defense, along with an extraterritoriality defense it did not raise in the motion to dismiss. Thereafter, Admiral opposed Bayeg's motion for class certification by presenting summary-judgment-like arguments that Admiral should prevail as a matter of law based on the "undisputed facts" adduced in discovery. Specifically, Admiral argued that the undisputed facts establish how UltiPro functioned and, based on those undisputed facts, the Act does not apply as a matter of law. That was essentially a summary judgment argument because a party is entitled to summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See 735 ILCS 5/2-1005(c) (West 2016). However, Admiral never filed a motion for summary judgment. Admiral now challenges the grant of class certification (but not the denial of its motion to dismiss) by making the same summary-judgment-like arguments even though the circuit court expressly avoided ruling on them in granting class certification.

¶ 27    We understand Admiral's assertion that a class cannot be certified unless the named plaintiff has an actionable claim. See *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 72 (2007). Whether the named plaintiff has a cause of action is a threshold question. If the plaintiff has no cause of action, there is no need to reach the section 2-801 analysis. *Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566, ¶ 47. Therefore, a defendant may file a dispositive motion before or at the same time as the plaintiff's motion for class certification, and the circuit court can rule on the defendant's dispositive motion before or in conjunction with ruling

on the plaintiff's motion for class certification. For example, a defendant can request a finding that a plaintiff seeking class certification has no cause of action by filing a motion to dismiss (*Turnipseed v. Brown*, 391 Ill. App. 3d 88, 93 (2009)), a motion for summary judgment (*Uesco*, 2013 IL App (1st) 112566, ¶ 48; *Dixon v. Mercury Finance Co. of Wisconsin*, 296 Ill. App. 3d 353, 361 (1998)), or a motion for judgment on the pleadings (*Alley 64, Inc. v. Society Insurance*, 2022 IL App (2d) 210401, ¶ 22). If the defendant files a dispositive motion that properly raises the merits, like a motion for summary judgment, the circuit court can decide the merits-based issues that motion raises. *Schlessinger v. Olsen*, 86 Ill. 2d 314, 319 (1981); *Uesco*, 2013 IL App (1st) 112566, ¶ 48.

¶ 28    In this case, however, only Bayeg's motion for class certification was before the circuit court. When Bayeg moved for class certification, Admiral had no dispositive motion pending. Its motion to dismiss had already been denied. When only a motion for class certification is before the circuit court, the court must assume the merits of the plaintiff's claim and cannot conduct factual inquiry into that claim. *Cruz*, 383 Ill. App. 3d at 764; see *Schlessinger*, 86 Ill. 2d at 319 (a circuit court reviewing a request for class certification cannot "make an unbidden determination that one party [is] likely to prevail on the merits"); *Chultem v. Ticor Title Insurance Co.*, 401 Ill. App. 3d 226, 237 (2010) (issues going "to the merits of the underlying actions" cannot be considered when determining class certification). That is because, "[b]y resolving the merits, the trial court effectively condition[s] class certification on plaintiffs' ability to prevail on the merits." *Cruz*, 383 Ill. App. 3d at 775.

¶ 29    However, in deciding a motion for class certification, the circuit court can engage in factual inquiry to resolve issues bearing on the section 2-801 requirements of numerosity, commonality,

and predominance; adequacy of representation; and appropriateness. *Id.* at 764. For example, a circuit court "need not accept a plaintiff's assertion that the class size is 10,000 where the evidence shows it to be only 10" because that is relevant to the numerosity requirement. *Id.*

¶ 30 The circuit court applied this standard correctly. In ruling on Bayeg's motion for class certification, the court assumed the merits of his claim under the Act and declined Admiral's invitation to resolve factual disputes regarding how UltiPro works and legal disputes about whether the Act applies to UltiPro's system.[3] That is, the court properly declined to decide whether UltiPro only took photographs of Admiral employees in Illinois, where UltiPro conducted facial geometry collection and analysis, and whether the Act applies to those functions. The court's factual inquiries were properly limited to the section 2-801 requirements. For example, in finding that damages were capable of common resolution, the court pointed to a spreadsheet that showed how many times each Admiral employee's facial geometry was allegedly scanned by UltiPro. In determining whether Bayeg adequately represented the class, the court relied on his deposition testimony showing that he "participated in all stages of the case; possesses a solid understanding of the underlying claim and his obligations to the putative class members; and communicates regularly with his attorneys, at least once a month."

¶ 31 The only instance in which Admiral properly challenged whether Bayeg has an actionable claim under the Act was its motion to dismiss. The circuit court's denial of that motion was a finding that Bayeg stated a claim for violation of section 15(a) and (b) of the Act. Bayeg did not

---

[3]The circuit court's class certification ruling contains a brief summary of Bayeg's allegations about how UltiPro functioned "[b]ased on the record evidence supporting the motion." However, this description is merely for background. The court did not engage in factfinding about how UltiPro actually functioned, nor did it identify the disputed and undisputed facts of this case. The court correctly recognized that it was required to assume the merits of Bayeg's claim under the Act, citing *Cruz* and *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001).

amend his complaint between the motion to dismiss and the motion for class certification. When Admiral opposed class certification by arguing that Bayeg had no actionable claim under the Act, the circuit court did not need to revisit the analysis it had already performed. On appeal, Admiral does not challenge the denial of its motion to dismiss even though this court could consider both the grant of class certification and the denial of Admiral's motion to dismiss. See *Schlessinger*, 86 Ill. 2d at 318; *Turnipseed*, 391 Ill. App. 3d at 93-96. To the extent Admiral implies that the circuit court should have granted its motion to dismiss because UltiPro only took photographs, to which the Act does not apply, we disagree. Bayeg alleged that UltiPro collected and analyzed facial geometry; Admiral's motion to dismiss insisted that it did not. Admiral's motion to dismiss and supporting affidavit merely disputed Bayeg's allegations about how UltiPro worked. A motion to dismiss was not the appropriate means to resolve that factual dispute. See *Evergreen Oak Electric Supply & Sales Co. v. First Chicago Bank of Ravenswood*, 276 Ill. App. 3d 317, 319 (1995).

¶ 32    We reject Admiral's attempt to conflate class certification under section 2-801 and summary judgment under section 2-1005. Admiral never filed a motion for summary judgment even though it could have done so. See *Uesco*, 2013 IL App (1st) 112566, ¶ 48 ("Although class certification should be determined as soon as practicable after the commencement of an action [citation], a motion for summary judgment by the defendant may be heard first."). We have found no Illinois authority holding that a plaintiff must show that his claim would survive an unfiled motion for summary judgment to have a class certified. And we certainly cannot review a summary judgment motion that Admiral never filed and that the circuit court never ruled upon. See *Gordon v. Bauer*, 177 Ill. App. 3d 1073, 1085 (1988) (citing *Kravis v. Smith Marine, Inc.*, 60 Ill. 2d 141, 147 (1975)); see also *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 469 (2003)

(reviewing courts do not render advisory opinions on unfiled motions). Nor have we found any authority suggesting that a defendant can, in a response to motion for class certification, seek what is effectively a summary judgment ruling. Sections 2-801 and 2-1005 set out different procedures and require different showings by the movant. 735 ILCS 5/2-801, 2-1005 (West 2016). Additionally, Admiral's "photographic exemption" and extraterritoriality arguments are currently pled as affirmative defenses. Analysis of affirmative defenses at summary judgment involves a completely different procedure than class certification.[4] See *Willett v. Cessna Aircraft Co.*, 366 Ill. App. 3d 360, 369 (2006).

¶ 33 Admiral argues that *Avery* required the circuit court to determine whether the Act applies extraterritorially to facial geometry collection and analysis that occurred on UltiPro's server in Georgia. We disagree. In *Avery*, the defendant automobile insurance company opposed class certification by arguing that its contracts with putative class members in 48 states could not be given a uniform interpretation due to differences in language regarding what repair parts insurance would cover. *Avery*, 216 Ill. 2d at 113. Our supreme court agreed and found that class certification was improper because variations in insurance policy language meant that individual issues of contract interpretation outweighed any common issues. *Id.* at 135. The supreme court explained that the circuit court should have addressed this issue at the class certification stage because it was relevant to whether common questions of fact and law predominated over individual issues. *Id.* at 127-28. By contrast, in this case, Admiral has never argued that whether the Act applies depends

---

[4]Admiral did not even raise its extraterritoriality argument in its motion to dismiss. Whenever the Northern District of Illinois has considered the Act's extraterritorial force, it has done so in the context of a motion to dismiss, not a motion for class certification. See, *e.g.*, *Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522, 527-29 (N.D. Ill. 2022); *Ronquillo v. Doctor's Associates, LLC*, 597 F. Supp. 3d 1227, 1230-34 (N.D. Ill. 2022); *Marsh v. CSL Plasma Inc.*, 503 F. Supp. 3d 677, 683-86 (N.D. Ill. 2020).

on the individual facts of each class member's claim. Rather, Admiral has consistently argued that the Act does not apply to *any* class member's claim because UltiPro *never* collected biometric data in Illinois. Where UltiPro collected and analyzed facial geometry and whether the Act applies to that process are issues that will affect all class members in the same fashion. Similarly, all class members were subject to the same allegedly non-Act-compliant policies. "[T]he determination of defendant's policies and practice[s] regarding timekeeping *** will affect the members of the proposed class in the same way. Resolution of the issues can be had as a mass, rather than individually ***." See *Cruz*, 383 Ill. App. 3d at 777.

¶ 34    Admiral also cites federal case law for the proposition that, in deciding class certification, "a court does not take the plaintiffs' allegations at face value" but "must go beyond the pleadings and, to the extent necessary, take evidence on disputed issues that are material to certification." (Internal quotation marks omitted.) *Howard v. Cook County Sheriff's Office*, 989 F.3d 587, 597 (7th Cir. 2021). However, *Howard* also states that "[t]he merits themselves are 'not on the table' " at the class-certification stage. *Id.* (quoting *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018)). *Howard* is consistent with Illinois case law set out above: in ruling on a plaintiff's motion for class certification, a circuit court must assume the merits of the plaintiff's claim but may conduct factual inquiry on the four class-certification requirements. Accordingly, we find that the circuit court's refusal to conduct factual inquiry into the merits of Bayeg's claim under the Act in ruling on his motion for class certification was proper.

¶ 35                    B. Commonality and Predominance of Damages

¶ 36    We now address the section 2-801 requirements for class certification. Admiral does not challenge numerosity or appropriateness. However, Admiral argues that damages are not susceptible to common resolution and that individual issues of damages predominate.

¶ 37    Our review of the circuit court's section 2-801 analysis is limited. *Cruz*, 383 Ill. App. 3d at 761. We review only the circuit court's exercise of discretion, and we do not engage in an independent evaluation of the facts that justify class certification. *Id.* To reverse the circuit court's ruling, we must find that the only reasonable conclusion is that a class action is not appropriate. See *id.*

¶ 38    To satisfy the second requirement of section 2-801, "*i.e.*, that a common question of fact or law predominates over questions affecting only individual class members, the plaintiff must show that the successful adjudication of the plaintiff's individual claim will establish a right of recovery in favor of the other class members." *S37 Management, Inc. v. Advance Refrigeration Co.*, 2011 IL App (1st) 102496, ¶ 17. "Determining whether issues common to the class predominate over individual issues requires the court to identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether these issues are common to the class." *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 449 (2006). Issues common to the class predominate if "a judgment in favor of the class members [would] decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim." (Internal quotation marks omitted.) *Id.* Once the circuit court determines that common questions of law or of fact predominate among the class members, the existence of questions that apply only to individual class members will not defeat the predominating common question. *S37 Management*, 2011 IL App (1st) 102496, ¶ 17.

¶ 39     We find that the circuit court did not abuse its discretion in concluding that common issues of law and fact predominate over individual issues. The class members allege that they were subject to uniform facial geometry harvesting practices due to Admiral requiring them to use UltiPro. See *In re TikTok, Inc., Consumer Privacy Litigation*, 617 F. Supp. 3d 904, 926 (N.D. Ill. 2022). Similarly, the class members allege they were all subject to Admiral's non-Act-compliant policies between March 2017 and June 2019. The substantive issues are (1) whether Admiral, using UltiPro, collected employees' "biometric identifiers" or "biometric information" as defined by section 10 of the Act, (2) if so, whether Admiral's extraterritoriality defense applies, (3) whether Admiral violated section 15(a) and (b) of the Act during the relevant time, and (4) whether Admiral's Act violations were negligent or reckless. The parties certainly disagree about the *answers* to these questions. However, there is no indication that, for example, some employees but not others signed Act-compliant releases. The parties appear to agree that all these substantive issues are common to the class. Resolution of these issues in Bayeg's favor will "establish a right of recovery in favor of the other class members." See *S37 Management*, 2011 IL App (1st) 102496, ¶ 17.

¶ 40     Assuming the class establishes that right of recovery, the question will become how to calculate damages. The circuit court has already identified the answer: a spreadsheet Admiral produced in discovery reflects each time class members used UltiPro and allegedly had their facial geometry scanned. Thus, damages can be calculated by multiplying each violation by either $1000 or $5000, depending on which mental state Bayeg is able to prove. See 740 ILCS 14/20(1)-(2) (West 2016). Our supreme court has indicated that this method of calculating damages in a case under the Act is proper. See *Cothron*, 2023 IL 128004, ¶¶ 38-43 (allowing damages for each scan

or transmission of biometric identifiers or biometric information by a private entity without prior informed consent). Furthermore, the Northern District of Illinois has held that class certification is appropriate when employees' damages can be calculated by applying a formula to activity reflected in an employer's own records.[5] See, *e.g.*, *Starr v. Chicago Cut Steakhouse, LLC*, 75 F. Supp. 3d 859, 875 (N.D. Ill. 2014); *Balderrama-Baca v. Clarence Davids & Co.*, 318 F.R.D. 603, 613-14 (N.D. Ill. 2017). That is particularly true where class plaintiffs seek statutory damages because that "eliminates individual variations" in damages awards. *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014); see *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Medical Supplies, Inc.*, 322 F.R.D. 458, 470 (N.D. Ill. 2017). The calculation of damages in this case should be straightforward and formulaic: the number of times Admiral violated each class member's rights under the Act multiplied by either $1000 or $5000, depending on whether Admiral acted negligently, recklessly, or intentionally.

¶ 41　Admiral argues that, because "[e]ach of these class members had different dates of employment[,] *** had different managers, punched the clock a different number of times, [and] may or may not have been subject to a 'Buddy Punch mismatch,' " damages are "highly individualized." We cannot see why damages would be "highly individualized" as a practical matter. For example, the question of who a given employee's manager was appears to have no impact on the Act's liability analysis or calculation of damages. Admiral does not identify any concrete difficulties these factors would cause in calculating damages.

---

[5]We are not bound by the decisions of federal district courts, but we can consider them as persuasive authority. *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2012 IL App (1st) 112321, ¶ 37 n. 3.

¶ 42    According to Admiral, "the circuit court below blithely made a speculative, erroneous and unsupported finding that 'there is a formula here' despite that neither party, nor the court, offered any such formula" to calculate damages. That is hyperbolic. Admiral's own brief identifies the formula: "$1,000 or $5,000 for each negligent or reckless violation of [the Act] as applied to each member of the class." Admiral does not explain how that formula is speculative, erroneous, or unsupported. Admiral does not dispute the accuracy of its own spreadsheet documenting employees' use of UltiPro, nor does it raise any concern that class members will seek actual damages rather than statutory damages.

¶ 43    Admiral's chief concern appears to be that the total damages award may be quite large, "run[ning] from $471.5 million to in excess of $2.35 billion." That may be true, but it does not mean that individual issues predominate over common issues. Furthermore, damages in a claim under the Act are discretionary, and a "trial court presiding over a class action—a creature of equity—would certainly possess the discretion to fashion a damage award that (1) fairly compensate[s] claiming class members and (2) include[s] an amount designed to deter future violations, without destroying defendant's business." (Internal quotation marks omitted.) *Cothron*, 2023 IL 128004, ¶ 42. Admiral's concern about a potentially devastating damages award is immaterial to class certification. The circuit court, in its discretion and in accordance with *Cothron*'s guidance, can decide the appropriate damages to award.[6]

¶ 44    Admiral cites *Bueker v. Madison County*, 2016 IL App (5th) 150282, to suggest that, even if class certification is appropriate for liability, it is inappropriate for damages and we can partially

_____

[6]We also note that the General Assembly recently passed an amendment to the Act to provide that, when a private entity collects a person's biometric data more than once, the entity has committed a single Act violation and the aggrieved person is entitled to at most one recovery. 103d Ill. Gen. Assem., Senate Bill 2979, 2024 Sess. It awaits the governor's signature.

decertify the class with respect to damages. *Id.* ¶ 54. *Bueker* is distinguishable. *Bueker* involved a class of plaintiffs who sought damages for financial losses caused by a county treasurer's sales of rights to collect delinquent taxes on various properties. *Id.* ¶¶ 1-3. The *Bueker* court held that damages could not be resolved on a class-wide basis because calculating damages required an individual review of each property sold and each piece of real estate had unique characteristics that impacted its sale value. *Id.* ¶ 35. This case does not involve unique parcels of real estate; it involves statutory damages for essentially identical uses of a digital time clock system. Accordingly, we affirm the trial court's finding of commonality and predominance.

¶ 45                                  C. Adequacy of Representation

¶ 46    Admiral next argues that Bayeg does not adequately represent the class because he waived his individual claim for monetary damages and is a "mere figurehead" with no real understanding of or interest in the litigation. The adequate representation requirement of section 2-801 ensures that class members receive proper, efficient, and appropriate protection of their interests. *Gordon v. Boden*, 224 Ill. App. 3d 195, 203 (1991). "The test to determine the adequacy of representation is whether the interests of those who are parties are the same as those who are not joined and whether the litigating parties fairly represent those not joined."[7] *CE Design Ltd. v. C&T Pizza, Inc.*, 2015 IL App (1st) 131465, ¶ 16 (citing *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981)).

¶ 47                                  1. Waiver of Monetary Damages

---

[7]In addition, " '[t]he attorney for the representative party must be qualified, experienced and generally able to conduct the proposed litigation.' " (Internal quotation marks omitted.) *CE Design*, 2015 IL App (1st) 131465, ¶ 16 (quoting *Miner*, 87 Ill. 2d at 14). Admiral does not contest that Bayeg's attorneys meet this requirement.

¶ 48    Admiral argues that Bayeg's deposition testimony establishes that he has "waived his claim for monetary damages"; therefore, he cannot adequately represent the class. The deposition testimony this argument relies on is as follows:

"Q. Are you seeking money personally in this case?

[Objection by counsel].

[A]. No.

Q. You're not seeking any money personally?

A. I'm representing a class.

Q. So you're only seeking money on behalf of a pu[ta]tive class, correct?

A. Yes. I'm representing a class."

¶ 49    This testimony is somewhat contradictory but is not an unequivocal waiver of monetary damages. On the one hand, Bayeg testified that he is not seeking any money personally, but on the other hand, he testified that he is seeking money on behalf of a class of which he is a member. Perhaps Bayeg was trying to express his understanding that this class action, if successful, will result in a "pool" of money from which he will draw damages as a class member. Regardless, this testimony is not so clear that the circuit court abused its discretion by finding that Bayeg has not waived his individual claim to monetary damages under the Act.

¶ 50    We have found no case law supporting Admiral's contention that Bayeg's deposition testimony operates as a complete bar to his recovery of monetary damages and, by extension, to serving as the class representative. Admiral cites *Smith* and *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 255 Ill. App. 3d 790 (1993), but neither of those cases involved a finding that a class representative waived his or her individual claim to damages such that he or she could not serve

as the representative. *Wheatley v. Board of Education of Township High School District 205*, 99 Ill. 2d 481 (1984), holds that, when a plaintiff has *already been granted* individual relief, his claim is moot and he cannot serve as the class representative. *Id.* at 484-85. In *Wheatley*, the plaintiffs accepted the defendant school district's offer to rehire them, mooting their claims that sought reinstatement following their dismissal. *Id.* at 483-85. By contrast, Bayeg has not been granted any relief in this case, as Admiral's brief concedes. *Wheatley* does not mean that Bayeg's claim is moot or that he cannot serve as the class representative. Accordingly, we find that the circuit court properly rejected Admiral's argument that Bayeg is not an adequate class representative based on his supposed waiver of individual monetary damages.

¶ 51                    2. Knowledge and Understanding of the Litigation

¶ 52    Finally, Admiral contends that Bayeg is an inadequate class representative because his deposition testimony shows that he is "ignorant or only superficially knowledgeable of key issues in this case." The only authority that Admiral cites in support of this argument is *Byer Clinic & Chiropractic, Ltd. v. Kapraun*, 2016 IL App (1st) 143733. *Byer* holds that a class representative must "have the desire and ability to prosecute the claim vigorously on behalf of [him]self and the other class members, which requires a sufficient level of knowledge and understanding of the litigation." *Id.* ¶ 9. Specifically, the class representative must have a general knowledge of the character of the action, his role as representative, and the core issues in the case. *Id.* ¶ 16. The representative cannot be a "figurehead" in a lawsuit controlled entirely by class counsel. *Id.* ¶¶ 16-17. The *Byer* majority found that the class representative in that case was inadequate because his deposition testimony revealed that he " 'just glanced at [the complaint] or something of that order,'

failed to identify [the defendant], failed to articulate underlying case specifics beyond the most general characterization, and knew nothing of his obligations as a class representative." *Id.* ¶ 20.

¶ 53    We are not convinced that *Byer* accurately states Illinois law. *Byer* created the requirements set forth above from federal cases and secondary sources. *Id.* ¶¶ 16, 19-28. The language that *Byer* uses appears only in federal case law. See, *e.g.*, *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482-83 (5th Cir. 2001) ("the class representatives [must] possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation"); *Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, 254 F. Supp. 3d 1007, 1023 (N.D. Ill. 2017) ("[f]igurehead plaintiffs are not permitted" in class actions). These limitations do not appear in Illinois case law.[8]

¶ 54    *Byer* "erects a higher barrier for attaining class certification than has previously been recognized in Illinois." *Byer*, 2016 IL App (1st) 143733, ¶ 35 (Simon, J., concurring in part and dissenting in part). Section 2-801 requires only that "[t]he representative parties will fairly and adequately protect the interest of the class" and says nothing about the representative's knowledge or understanding of the case. 735 ILCS 5/2-801 (West 2016).

¶ 55    As noted above, in Illinois, "[t]he test applied to determine adequacy of representation is whether the interests of those who are parties are the same as those who are not joined and whether the litigating parties fairly represent those not joined." *Miner*, 87 Ill. 2d at 14; *CE Design*, 2015 IL App (1st) 131465, ¶ 16; see *Lee v. Buth-Na-Bodhaige, Inc.*, 2019 IL App (5th) 180033, ¶ 63; *Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1000 (1991). Those issues

---

[8]Only one other Illinois court, in an unpublished decision, has adopted *Byer*'s requirement that a class representative must have "a sufficient level of knowledge and understanding of the litigation." (Internal quotation marks omitted.) *Pate v. Palmer I, LLC*, 2017 IL App (1st) 161471-U, ¶ 39

have little if anything to do with how much the class representative knows about the case; rather, they focus on whether the representative's interests are aligned with the other class members' interests. Obviously, the class representative must have *some* knowledge about the case (*Byer*, 2016 IL App (1st) 143733, ¶ 39), but the bar for that is low. The class representative "need only have a marginal familiarity with the facts of his case[ ] and does not need to understand the legal theories upon which his case is based to a greater extent." (Internal quotation marks omitted.) *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill. App. 3d 538, 550-51 (2003).

¶ 56    We hold that the circuit court did not abuse its discretion in concluding that Bayeg is an adequate representative of the class. There is no dispute that Bayeg's interests are the same as other class members or that Bayeg, as a former Admiral employee, is representative of other Admiral employees. See *Miner*, 87 Ill. 2d at 14. Furthermore, as the circuit court found, Bayeg's deposition testimony confirms that he has at least "a marginal familiarity with the facts of his case[ ]." (Internal quotation marks omitted.) See *Clark*, 343 Ill. App. 3d at 550-51. Accordingly, we affirm the circuit court's ruling that Bayeg is an adequate representative of the class.

¶ 57                                III. CONCLUSION

¶ 58    For the foregoing reasons, we affirm the circuit court's grant of class certification.

¶ 59    Affirmed.

---

*Bayeg v. The Admiral at the Lake*, 2024 IL App (1st) 231141

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-8828; the Hon. Alison C. Conlon, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Mary A. Smigielski, Josh M. Kantrow, Thomas M. Wolf, and Cameron T. Liljestrand, of Lewis Brisbois Bisgaard & Smith LLP, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Keith J. Keogh and Gregg M. Barbakoff, of Keogh Law, Ltd., of Chicago, for appellee. |

---