2025 IL App (1st) 241034-U

FIRST DISTRICT,
SIXTH DIVISION
August 1, 2025

No. 1-24-1034

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| REBA SHAVERS, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | Appeal from the |
| v. | ) ) | Circuit Court of Cook County, Illinois. |
| THE UPS STORE, INC., GENERATION I, LLC, d/b/a UPS Store #7181 in its own right and as a representative of a class of similarly situated UPS Store franchisees, JOHN DOES 1-200, and REX K. INGRAM, an individual, and a notary public, in his individual capacity and as co-owner of Generation I, LLC, | ) ) ) ) ) ) ) ) ) ) | No. 2020 CH 05119 Honorable Thaddeus L. Wilson, Judge Presiding. |
| Defendants-Appellants. | ) | |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Plaintiff alleged she was charged an unlawfully high fee for notary services at a retail franchise store and brought a class action suit against the notary, the store, and the franchisor. The trial court certified a plaintiff class of all persons who paid unlawfully high notary fees at that store, and defendants appealed. Finding no abuse of discretion, we affirm the grant of class certification.

¶ 2        Plaintiff Reba Shavers brought a class action complaint against The UPS Store, Inc. ("TUPSS") and other defendants, alleging she was overcharged for notary services at UPS Store #7181 in violation of the Illinois Notary Public Act (Notary Act) (5 ILCS 312/3-104(a) (West 2018)). The trial court certified a plaintiff class of all individuals who were overcharged for notary services at UPS Store #7181. Defendants filed an interlocutory appeal pursuant to Supreme Court Rule 306(a)(8) (eff. Oct 1, 2020). Finding no abuse of discretion by the trial court, we affirm the grant of class certification.

¶ 3                                          I. BACKGROUND

¶ 4        Prior to January 1, 2022, the Notary Act provided that "the maximum fee in this State is $1.00 for any notarial act performed," with exceptions not relevant here. 5 ILCS 312/3-104(a) (West 2018). On April 2, 2020, Shavers allegedly visited UPS Store #7181, a store operated by Generation I, LLC, a TUPSS franchisee. She had two documents notarized by Rex Ingram, the co-owner of the store and a notary public. For each document, she was charged a $1 notary fee and a $4 "clerical fee," although no clerical services were provided beyond notary services.

¶ 5        On July 24, 2020, Shavers filed the instant action against TUPSS, Generation I, Ingram, and "John Does 1-200," defined as "franchisees doing business as The UPS Store, Inc. in the state of Illinois." Her complaint seeks relief on behalf of herself, and a proposed class of individuals overcharged for notary services by defendants.

¶ 6        On August 16, 2022, the trial court dismissed with prejudice all claims against TUPSS under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)). In *Shavers v. UPS Store, Inc.* (*Shavers I*), 2023 IL App (1st) 221407-U, we affirmed in part and reversed in part, finding that Shavers had stated a cause of action for civil conspiracy against TUPSS, and affirming the dismissal with prejudice of her remaining claims against TUPSS.

¶ 7          On September 13, 2023, Shavers filed her fourth amended complaint, the operative complaint in this appeal. The complaint alleges defendants engaged in "conduct which constitutes violation of, and/or conspiracy to commit violations of" the Notary Act by charging unlawfully high fees for notary services. It further alleges that TUPSS exerts an "extreme high level of control and influence" over its franchisees' notary transactions, including "monitoring, being aware of, and approving" the prices charged for those services. Despite being aware that "many if not all" of its Illinois stores charge "well in excess" of the statutory maximum, TUPSS continues to "direct, allow, encourage, and/or enable" these illegally high prices and "reap[] substantial illicit profits" therefrom.

¶ 8          Shavers seeks relief in four counts. Counts I, II, and III are brought against Generation I and Ingram (collectively, the Gen I defendants), as well as a proposed defendant class of UPS Store franchisees doing business in Illinois. In count I, violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 (West 2020)), she alleges the Gen I defendants committed an "unfair and deceptive practice" by failing to disclose the $4 "clerical fee" or "the specific nature and/or amount of the fees being charged for notary services" until after the notary transaction was completed. She also alleges it was deceptive to misrepresent to consumers that clerical services would be or were performed for a fee when no such services were performed, and the purported clerical services were an attempt to disguise an unlawful notary service fee.

¶ 9          In count II, violation of the Notary Act, Shavers alleges the Gen I defendants "systematically and routinely" overcharge for notary services in violation of section 3-104(a). Although the statutory maximum for non-electronic notarization was raised to $5 as of January

1, 2022 (5 ILCS 312/3-104(a) (West 2022)), Shavers claims defendants continued to violate the statute by charging fees over $5.

¶ 10        In count III, unjust enrichment, Shavers alleges the Gen I defendants were unjustly enriched by the excessive fees they charged in violation of the Consumer Fraud Act and Notary Act.

¶ 11        In count IV, civil conspiracy, Shavers alleges all defendants "entered into a conspiracy by agreeing with each other each to wrongfully charge statutorily excessive fees for notary services provided at the TUPSS Store locations owned and/or operated by the Representative Defendants and the other Franchisee Defendants."

¶ 12        On November 16, 2023, Shavers moved for bilateral class certification. She sought certification of a plaintiff class of "[a]ll persons who paid fees to TUPSS in excess of the maximum set forth in the [Notary Act] for notary services in Illinois." She also sought certification of a defendant class of all persons and business entities who owned or operated an Illinois TUPSS store that charged notary fees more than the statutory maximum.

¶ 13        Defendants filed an opposition to Shavers' motion for certification in which they argued, among other things, that the elements of commonality and predominance were not met because the court would have to conduct individualized inquiries for each putative plaintiff "to determine whether a clerical fee was charged, if and exactly when the customer was told of the clerical fee, by whom, and whether any services that could arguably be considered clerical were provided." Likewise, they argued Shavers was not an adequate class representative because "her fact bound claim *** [is] not typical of the claims of each class member who was allegedly charged excessive prices."

¶ 14        Defendants further argued that evidence produced in discovery showed TUPSS did not "conspire" with Generation I or any other franchisee regarding notary pricing. On the contrary, according to defendants, each franchisee decides for themselves what prices to set, and TUPSS "does not recommend, instruct, advise, or even audit" what franchisees charge for notary services.

¶ 15        In support of their positions, both sides rely on Ingram's deposition testimony, wherein he states that in 2019, when Generation I started doing business as UPS Store #7181, Ingram contacted the National Notary Association and was advised that he could charge $1 for most notary services in Illinois. He observed businesses "across the area" charging over $5, so he decided to charge $1 for notary services plus a $4 "surcharge" or "convenience fee" to "cover overhead and things like that." After deciding on this $1-plus-$4 pricing, Ingram checked the TUPSS point-of-sale (POS) system and saw an existing "SKU" code for clerical services, which he assigned to this transaction. He did not discuss this decision with anyone at TUPSS or seek their approval.

¶ 16        In 2019, Ingram "skimmed through" TUPSS' Center of Operations manual, but he did not remember reading the section on notary services and did not consult it when deciding the price to charge. He had not consulted the manual since 2019 and did not receive any training from TUPSS in conducting notary transactions.

¶ 17        Although multiple notaries have provided services in Ingram's store, Ingram testified "I believe it was just me" prior to August 2020. When a customer requested notary services, his procedure was to inform them: "[I]t will be $1 for the notary, then it's going to be a $4 fee, which is separate from that. It's going to be, you know, for the convenience, overhead, just a surcharge type of thing. Is that okay with you?" After obtaining the customer's "okay," he would

direct the customer to sign the document and then he would stamp it. The customer's receipt would reflect separate $1 and $4 charges. When asked what service was provided in exchange for the $4 fee, Ingram replied: "[T]he service was a notary service for that—no, no, no. No. No. No. I'm sorry. Strike that. *** [T]he clerical fee was just for the convenience. It wasn't *** for the notary."

¶ 18    Ingram testified that his encounter with Shavers was a typical notary transaction. He allegedly informed her of the $1-plus-$4 cost before she signed, and before he stamped the documents. This is at odds with Shavers's claim that she was not informed of the pricing breakdown until after the notary transaction was completed. In August 2020, Ingram learned he was being sued over the $4 clerical fee. He stopped charging the $4 fee because, "right or wrong," he "didn't want that to be compounded if it was found to be something wrong." UPS Store #7181 does not currently charge a clerical fee for notary services.

¶ 19    On April 11, 2024, the trial court entered an order granting Shavers' certification motion in part and denying it in part. The court denied Shavers' request to certify a defendant class, finding she lacked standing to sue franchisees other than Generation I because she was not injured by them. The court also denied Shavers' request to certify a statewide plaintiff class to correspond to her requested defendant class. Instead, the court certified a more limited plaintiff class of "[a]ll persons who paid fees to TUPSS in excess of the statutory maximum set forth in the [Notary Act] for notary services in Illinois at UPS Store #7181." The court specified this class was "with respect to the named Defendants only," *i.e.*, TUPSS, Generation I, and Ingram.

¶ 20    The court found Shavers had demonstrated the four prerequisites for a class action: numerosity, commonality and predominance, adequacy, and appropriateness. Numerosity was not disputed. Regarding commonality and predominance, the court found "the question at the

heart of this matter" was whether the defendants conspired to charge unlawful notary fees, and "[i]f Shavers successfully shows a conspiracy to charge illegal notary fees, it will all but resolve the class claims." Regarding adequacy, the court stated that Shavers was allegedly overcharged for notary services at a TUPSS store, and the proposed plaintiff class "allegedly has experienced similar conduct." Thus, Shavers "would adequately represent the class as her interests are identical to the proposed plaintiff class." Based on the foregoing factors, the court found it appropriate to have the action proceed as a class action.

¶ 21                                   II. ANALYSIS

¶ 22        Section 2-801 of the Code of Civil Procedure provides four prerequisites for class certification: (1) the class is so numerous that joinder is impractical; (2) common questions of fact or law predominate over questions affecting individual class members; (3) the representative party will fairly and adequately protect class interests; and (4) a class action is "an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801 (West 2022); see also *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 447 (2006). The party seeking certification bears the burden of establishing these prerequisites. *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 167 (2005). In deciding whether to certify a class, the court may consider "any matters of fact or law properly presented by the record," including pleadings, depositions, affidavits, and answers to interrogatories. *Bueker v. Madison County*, 2016 IL App (5th) 150282, ¶ 22. Certification is within the trial court's broad discretion and will not be disturbed absent a clear abuse of discretion or an application of impermissible legal criteria. *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007).

¶ 23        Defendants argue that certification was an abuse of discretion because (1) Shavers is not an adequate class representative due to having no individual claim under the Consumer Fraud

Act; (2) common issues do not predominate; and (3) Shavers' conspiracy claim against TUPSS "failed as a matter of law once it was subject to evidentiary testing." We consider these contentions in turn.

¶ 24                              A. Adequacy of Shavers as a Class Representative

¶ 25        In assessing adequacy, the court must consider "whether the interests of the named parties are the same as the interests of those who are not named" and ensure class members receive "appropriate protection of their interests in the presentation of the claim." *Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 778 (2008). The trial court found Shavers was an adequate representative because "her interests are identical to the proposed plaintiff class," she was an active participant in the case, and her attorney was qualified to represent the class.

¶ 26        Defendants argue Shavers is not an adequate class representative, and that she cannot establish commonality and predominance, because she does not have a meritorious claim under the Consumer Fraud Act, which prohibits "unfair or deceptive acts or practices *** in the conduct of any trade or commerce." 815 ILCS 505/2 (West 2020). Specifically, defendants contend the clerical fee was not deceptive based on Ingram's deposition testimony that he informed Shavers of the fee before she signed, and before he notarized her documents.

¶ 27        Defendants' argument on the merits of Shavers's claim is misplaced, for the sole issue in this appeal is whether the court abused its discretion in certifying the class. Unless evaluating the merits is necessary to determine class certification prerequisites, we cannot get into the merits at this stage. *Chultem v. Ticor Title Insurance Co.*, 401 Ill. App. 3d 226, 237 (2010) (issues going "to the merits of the underlying actions" cannot be considered when determining class certification). Here, a merits-based analysis and conclusive determination is unnecessary, for it is

not directly relevant to the adequacy requirement, or the commonality and predominance requirements.

¶ 28    We acknowledge that a class representative "cannot adequately represent a class when the representative does not state a valid cause of action." *De Bouse v. Bayer*, 235 Ill. 2d 544, 560 (2009); see *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 73 (2007) (class certification reversed because the allegedly deceptive product name was nothing more than puffery and could not form the basis of an actionable claim under the Consumer Fraud Act). However, defendants do not assert Shavers failed to state a cause of action. Instead, defendants look outside the four corners of the complaint and argue the evidence produced through "extensive discovery" refute Shavers's claim that she was not informed of the $1-plus-$4 cost until after the transaction was completed. Essentially, defendants are making a summary judgment-type argument that is not appropriate on a motion for class certification.

¶ 29    In *Cruz*, 383 Ill. App. 3d at 764, we explained that in ruling upon a motion for class certification, the trial court's factual inquiry is limited to issues bearing on section 2-801 requirements of numerosity, commonality and predominance, adequacy, and appropriateness. Accordingly, we reversed the trial court's denial of class certification where the court's fact-finding impermissibly crossed the line into the ultimate merits of the complaint. *Id.* at 772.

¶ 30    Similarly, in *Bayeg v. Admiral at the Lake*, 2024 IL App (1st) 231141, ¶ 26, we declined to consider "essentially a summary judgment argument" on appeal from a grant of class certification. The *Bayeg* plaintiff filed suit against his former employer, alleging the employer's timekeeping system violated the Biometric Information Privacy Act (BIPA) (740 ILCS 14/1 *et seq.* (West 2016)). After the trial court granted plaintiff's motion for class certification, defendant appealed, arguing "the undisputed record" showed its system did not fall within the

ambit of BIPA. *Bayeg*, 2024 IL App (1st) 231141, ¶ 25. We "reject[ed] [defendant's] attempt to conflate class certification under section 2-801 and summary judgment under section 2-1005" (*id.* ¶ 26), explaining:

> "We have found no Illinois authority holding that a plaintiff must show that his claim would survive an unfiled motion for summary judgment to have a class certified. And we certainly cannot review a summary judgment motion that [defendant] never filed and that the circuit court never ruled upon. [Citations.] Nor have we found any authority suggesting that a defendant can, in a response to motion for class certification, seek what is effectively a summary judgment ruling." *Id.* ¶ 32.

¶ 31    As in *Bayeg*, we reject defendants' attempt to conflate class certification with summary judgment, and find the trial court did not abuse its discretion in finding Shavers an adequate class representative. We also reject defendants' claim that Shavers produced no evidence to support class certification and simply relied on her pleading. Shavers relied on the deposition of TUPSS's corporate representative Sean O'Neal, Ingram's deposition, attorney Bronson's declaration with exhibits attached, declarations of Shavers and Victor Powell, and materials such as TUPSS's operating manuals, franchise agreements, training documents, and newsletter.

¶ 32                            B. Commonality and Predominance

¶ 33    Defendants also argue that common questions of fact do not predominate, and liability depends on individualized circumstances particular to each proposed class member. We disagree.

¶ 34    To satisfy the commonality requirement, Shavers must show that successful adjudication of her individual claims will establish a right of recovery in other class members. *Ramirez*, 378 Ill. App. 3d at 54. Where this test is met, "a judgement in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the

class to file proof of their claim." (Internal quotation marks omitted.) *Bemis v. Safeco Insurance Co. of America*, 407 Ill. App. 3d 1164, 1167 (2011). Determining whether common issues predominate over individual issues "requires the court to identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether these issues are common to the class." *Smith*, 223 Ill. 2d at 449. The ultimate test of predominance is "whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Id.* at 448-49.

¶ 35    Here, the trial court found this element was met because "[i]f Shavers successfully shows a conspiracy to charge illegal notary fees, it will all but resolve the class claims." Defendants nevertheless argue that resolving the Consumer Fraud Act claims will require particularized inquiries as to whether each putative plaintiff was informed of the "clerical fee" in advance and, if so, whether they agreed to pay. Not so. Defendant Ingram testified it was "just [him]" providing notary services prior to August 2020, while the $1-plus-$4 pricing scheme was in place, and he handled every notary transaction the same way. Moreover, Shavers alleged it was unfair and deceptive to charge customers for clerical services that were never requested or performed to trick them into paying unlawfully high notary fees.

¶ 36    Pointing once again to Ingram's deposition testimony that he told Shavers before the transaction that it would cost $5, defendants argue there was no deception and, therefore, no class can be certified. In support, defendants cite *Martis v. Pekin Mem. Hosp.,* 395 Ill. App. 3d 598 (2009), and *Saunders v. Mich. Ave. Nat. Bank*, 278 Ill. App. 3d 307 (1996), where the courts dismissed consumer fraud claims on their face for failure to state a cause of action.

¶ 37    The critical difference here is that defendants have already answered Shavers's complaint, which alleges Shavers was told the notary fee was $5 and was not informed of the $4

clerical fee until after the notary transaction was completed. Defendants now point to evidence outside the complaint they say disproves these allegations. Perhaps the evidence does or will refute them. But without a proper motion for summary judgment, we cannot engage in a factual inquiry beyond section 2-801 requirements or decide the ultimate merits of Shavers's claims as a matter of law. See *Cruz*, 383 Ill. App. 3d at 764; *Bayeg*, 2024 IL App (1st) 231141, ¶ 26. All we can do is decide the issue of whether defendants' conduct violates the Consumer Fraud Act is an issue common to the class. Without straying into the merits, we find it is, and that a ruling on this issue later will resolve a question common to the claims of all class members.

¶ 38     Defendants also challenge commonality as to the Notary Act claim, arguing that Ingram was one of three notaries at the Generation I store, and each putative plaintiff would have to establish "on a transaction-by-transaction basis who the notary was" and whether an excessive fee was charged. This contention lacks merit, since Ingram testified at his deposition that (1) he was the only notary providing notary services at the store during the relevant time, or at least the largest majority of transactions; (2) he told each customer the same thing; (3) he charged them all the same; and (4) that if his other two employees notarized documents, they "[a]bsolutely" followed the same procedure of telling customers about the $1-plus-$4 costs. This distinguishes Shavers's case from *Arca v. Col. Bank & Tr. Co. of Chi.*, 265 Ill. App. 3d 498, 501 (1994), and *Bemis,* 407 Ill. App. 3d at 1167, where liability depended on individualized questions, varying oral representations made to different persons, and particular expenses charged to each person.

¶ 39     Nonetheless, even if individual questions or minor hypothetical variations exist in Shavers's case, they do not necessarily defeat class certification where the claim is founded upon essentially the same transactions, pricing, and language used by defendants. See *Ramirez,* 378 Ill. App. 3d 51 (affirming class certification in consumer fraud action alleging false billings); *Hall v.*

*Sprint Spectrum L.P.*, 376 Ill. App. 3d 822 (2007) (affirming class certification in consumer fraud action arising out of termination fees charged in the same basic manner to the class); *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.,* 345 Ill. App. 3d 992 (2004) (affirming class certification where class was predicated on an essentially identical entry appearing on class members' bills). Should a hypothetical problem arise by the presence of individual questions, the court can amend the certification order before a decision on the merits. See 735 ILCS 5/2-802 (West 2020).

¶ 40        As defendants recognize, their arguments regarding the unjust enrichment and conspiracy claims are coextensive with their arguments regarding the Consumer Fraud Act and Notary Act claims, which we have already rejected. Because the elements of commonality and predominance have been met with respect to the Consumer Fraud Act and Notary Act claims, we find no abuse of discretion in the trial court's finding that Shavers met the element of commonality and predominance for the unjust enrichment and conspiracy claims as well, and finding it appropriate to have the action proceed as a class action.

¶ 41                                C. Conspiracy Claim Against TUPSS

¶ 42        Lastly, defendants contend the trial court erred in certifying a conspiracy claim against TUPSS because "the undisputed evidence establishes there was not a conspiracy between TUPSS and Generation I about notary pricing." According to defendants, the record shows Generation I independently decided what to charge for notary services without input or approval from TUPSS. If the evidence is undisputed, defendants should file a motion for summary judgment to test the merits of Shavers's underlying claim. However, we decline to conduct a factual inquiry into the merits of Shavers' conspiracy claim where there is no dispositive motion on file and an inquiry into the merits is not directly relevant to class certification. See *Cruz*, 383

Ill. App. 3d at 764 (court's factual inquiry on a motion for class certification is limited to issues bearing on section 2-801 requirements of numerosity, commonality and predominance, adequacy, and appropriateness); *Bayeg*, 2024 IL App (1st) 231141, ¶ 30 (reviewing court cannot review a summary judgment motion that was never filed or ruled upon by the circuit court).

¶ 43                                    III. CONCLUSION

¶ 44        For the foregoing reasons, we affirm the trial court's grant of class certification. The circuit court did not abuse its discretion in finding the predominance requirement met by the common questions of whether defendants charged notary fees more than the legal limit, whether they deployed deceptive or unfair tactics in violation of the Consumer Fraud Act, and whether the defendants conspired in doing so. These issues predominate over any individual issues as to the services involved, amounts charged, or other hypothetical issues defendants raise. The court also did not abuse its discretion in finding Shavers is an adequate class representative and that a class action is an appropriate method to fairly and efficiently adjudicate the controversy, particularly given the small amount of recovery that each individual class member can likely expect if they prevail.

¶ 45        Affirmed.