2025 IL App (1st) 241323-U
No. 1-24-1323

FIRST DIVISION
August 25, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| TYRONE BREWER, on behalf of himself and all others similarly situated, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 2022 CH 04868 |
| PEPPERIDGE FARM, INCORPORATED, | ) ) | |
| Defendant-Appellant. | ) ) ) | The Honorable Anna M. Loftus, Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

*Held*:    We reverse the trial court's order certifying a class where the trial court (1) permitted plaintiff's daughter's law firm to remain as class counsel and (2) retained plaintiff as the sole class representative. We remand for further proceedings at which the trial court should make findings as to which counsel and additional representative plaintiffs will adequately represent the putative class.

¶ 1    Plaintiff, whose daughter is an attorney at the Community Lawyers, LLC law firm (Community Lawyers), brought a putative class action premised on alleged violations of the Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. (BIPA). Plaintiff is the sole named

representative plaintiff. Plaintiff is represented by attorneys at three firms, including his daughter's firm. In granting plaintiff's motion for class certification, the trial court specified that plaintiff's daughter could not serve as class counsel due to a potential conflict of interest. However, it permitted the Community Lawyers firm (as well as attorneys from two other law firms) to remain as class counsel. It also permitted plaintiff to remain as the sole class representative. For the following reasons, we reverse the certification order and remand for the court to make explicit findings as to whether any possible conflict of interest precludes any of the named counsel from adequately representing the class.

¶ 2                                    BACKGROUND

¶ 3        Defendant Pepperidge Farm operated a bakery in Downers Grove, Illinois. Between 2016 and October 2020, the bakery had a "HandKey" device at its entrance. To enter the facility, an individual had to first enter a six-digit PIN and place their hand on the device. The HandKey device did not analyze fingerprints or handprints. Rather, it used an infrared camera to measure features related to the back of an individual's hand, such as finger length or knuckle height. As described by defendant, the HandKey device permitted access if the basic shape of the user's hand sufficiently matched the existing "template" shape associated with the user's PIN. The parties dispute whether the HandKey device collected any "biometric identifier" or "biometric information" as those terms are defined in BIPA (see 740 ILCS 14/10 (West 2024)); we emphasize that we do not decide such questions in this appeal.

¶ 4        Plaintiff worked at defendant's bakery for seven days between July 2, 2020, and July 15, 2020. During that time, he used the HandKey device to access the facility. Plaintiff's daughter is an attorney, Celetha Chatman of Community Lawyers; it is undisputed that the only two lawyers

at the firm are Chatman and Michael Wood. Plaintiff testified that it was his daughter, Chatman, who informed him that defendant's conduct was in violation of BIPA.

¶ 5                                    Federal Court Action

¶ 6        On January 19, 2021, plaintiff filed a "Class Action Complaint" in the United States District Court for the Northern District of Illinois, alleging defendant's violation of BIPA. That complaint identified a proposed class of all persons who were employed by defendant "and whose handprint is or was collected, captured or otherwise obtained by the company, at any time from five years before the date of Plaintiff's original complaint to the date the class is certified."

¶ 7        The federal complaint identified plaintiff's lawyers as his daughter, Chatman of Community Lawyers, as well as Michael Drew of Neighborhood Legal LLC (Neighborhood Legal).  On May 20, 2022, plaintiff (through attorney Drew) filed a notice of voluntary dismissal without prejudice in the federal court.

¶ 8                              Plaintiff Files in the Circuit Court

¶ 9        On May 20, 2022 (the same day as the dismissal of the federal court action), plaintiff filed a class action complaint in the circuit court. The complaint identified Drew as plaintiff's attorney; it did not mention Chatman or any other attorney.

¶ 10        On November 14, 2022, plaintiff (again through attorney Drew) filed a First Amended Class Action Complaint, which generally alleged that defendant violated "their employees' privacy rights by unlawfully collecting, storing, and /or using their biometric data and information not in accordance with BIPA."

¶ 11        Plaintiff alleged that when he began employment, "his handprint was scanned and saved by the biometric time clock system" which was "used to identify him during his workhours, when he needed to get through the building door." To access the facility, he scanned his hand "on a

biometric time clock" and entered a six-digit code. He estimated that he and other employees scanned their hands "three to six times per day." Plaintiff alleged that defendant was in possession of his "biometric information."

¶ 12       The first amended complaint contained two counts. Count I pleaded that defendant violated section 15(a) of BIPA by "failing to develop and maintain a publicly available retention and destruction schedule" and by "failing to delete Plaintiff's biometric data once he no longer worked there." See 740 ILCS 14/15(a) (West 2022). In count II, plaintiff alleged that defendant violated section 15(b) of BIPA by "obtaining biometric identifiers without making the required disclosures and receiving a written release from each Class member." See 740 ILCS 14/15(b) (West 2022).

¶ 13       The first amended complaint sought certification of the following class:

> "All persons in the United States who are or were employed by Pepperidge Farms, and whose handprint is or was collected, captured or otherwise obtained by the company, in Illinois, at any time from five years before the filing date of Plaintiff's original Federal complaint to the date the class is certified."

The first amended complaint pleaded that the class was so numerous that joinder was impracticable and that common questions of law and fact predominate over individual questions.

¶ 14       Plaintiff sought damages of "$1,000 for each negligent violation, and $5,000 for each intentional or reckless violation" of BIPA, plus reasonable attorneys' fees and costs. He sought appointment as the sole representative of the class and appointment of his attorneys as class counsel. The first amended complaint identified Drew and his firm, Neighborhood Legal, as plaintiff's attorneys. It did not name any other attorneys.

¶ 15                                   First Motion for Class Certification

¶ 16 On April 18, 2023, plaintiff filed a motion to certify a class consisting of "(1) persons in the United States who are or were employed by Defendant (2) whose handprint is or was collected, captured or otherwise obtained by Defendant in Illinois (3) from January 29, 2015 to the present."

¶ 17 Plaintiff's motion included declarations from three attorneys who would act as class counsel: (1) Drew of Neighborhood Legal; (2) Wood of Community Lawyers (plaintiff's daughter's firm); and (3) Daniel Brown of Williams Barber & Morel, Ltd (Williams Barber).

¶ 18 In his declaration, Drew stated that for "2.5 years during law school, I clerked at Community Lawyers," the same firm that employs plaintiff's daughter and Wood. Drew stated that he was admitted to practice in 2019 and that he founded Neighborhood Legal.

¶ 19 In his declaration, Wood indicated he had extensive experience as class counsel, including in BIPA class actions. Wood's declaration made no mention of Chatman, plaintiff's daughter, although he and Chatman appear to be the only two attorneys at the Community Lawyers firm.

¶ 20 In summer 2023, the parties engaged in discovery, including interrogatories and depositions.

¶ 21 In August 2023, plaintiff's counsel sent defendant a letter proposing settlement. Plaintiff's counsel indicated their belief that, based on information provided in discovery, defendant had "violated BIPA 361,513 times during the class period." Plaintiff's counsel noted that BIPA provides $1000 damages for each negligent violation and $5,000 for a reckless violation. See 740 ILCS 14/20 (West 2022). The letter stated: "At $1,000 per violation, the damages are $361,513,000. At $5,000 per violation, the damages are $1,807,565,000."

¶ 22 Renewed Motion for Class Certification

¶ 23 On October 20, 2023, plaintiff filed a renewed motion for class certification, which attached the same April 2023 declarations from attorneys Brown, Drew, and Wood.

¶ 24                                        Plaintiff's Deposition Testimony

¶ 25         In January 2024, plaintiff was deposed. He testified that he worked at defendant's bakery after being hired through an employment agency. He recalled that during orientation, he was instructed on how to use a hand scanner and was told it was "for security reasons." At times, he indicated his belief that defendant may have saved his fingerprints:

> "Q. Do you believe that your hand was scanned and that the initial scan was somehow saved or kept by Pepperidge Farm?
>
> A. Well, the world that we live in today everything is saved.
>
> Q. Did you believe at the time, though, when your hand was scanned that there would be some type of image that was saved by Pepperidge Farm?
>
> A. I didn't know what it was about my hand scan. When I found out that this *** might be against the rules and everything, I thought about it. After I thought about it, I'm appalled that they took my hand scan because *** they could take my fingerprints and put – it's like if you was a thief, you could put my fingerprints – she could get killed and the person that has that information could put my fingerprints right there and then say I was there and I really wasn't there.
>
> I mean, I'm appalled that *** they took that kind of authority without asking me about the consequences of that action. *** I would like to have been informed of something like that."

¶ 26    Asked how he came to understand that "collecting fingerprints might be against the rules," plaintiff testified that "I heard it from my daughter," Chatman. Plaintiff stated that his daughter was one of his attorneys in this case.

¶ 27    Plaintiff testified to his belief that his daughter was a bankruptcy lawyer, but he stated that he was "not sure" where his daughter worked. Plaintiff stated he was not sure if he had ever met or spoken with attorney Drew of Neighborhood Legal, who had filed the dismissal of his federal lawsuit.

¶ 28    Plaintiff testified that he had been unaware of the prior federal lawsuit in his name, and that he had only learned the previous Tuesday before his deposition that it was voluntarily dismissed. Similarly, plaintiff testified he had not seen a copy of the May 2022 complaint filed in circuit court until the Tuesday before his deposition.

¶ 29    Plaintiff testified that he did not see a copy of plaintiff's answers to interrogatories until after they were filed on July 7, 2023. However, when subsequently questioned by his counsel, he agreed that he met with his attorneys to prepare the answers to the interrogatories.

¶ 30                    Defendant's Opposition to Class Certification

¶ 31    On February 22, 2024, defendant filed a brief in opposition to the renewed motion for class certification, raising several arguments.

¶ 32    Defendant primarily argued that plaintiff and his counsel could not fairly and adequately represent the class. According to defendant, plaintiff's deposition testimony demonstrated that he lacked basic knowledge of the case and that he was merely an "instrument of his counsel, who seek to shake down [defendant] for a settlement." Defendant also averred that there was a conflict of interest arising from plaintiff's "familial relationship with would-be class counsel." Defendant noted that plaintiff was represented by, among others, his daughter's former law clerk (Drew) and

her "boss" (Wood). Defendant acknowledged that attorneys from a third firm, Williams Barber, had also appeared as plaintiff's counsel, but defendant argued that their addition did not "cure the conflict."

¶ 33    Defendant separately argued that class certification was improper because numerous individual issues predominated over common issues. Defendant posited such individualized questions included whether any data collected by the HandKey device qualified as "biometric information" under BIPA; whether class members consented to using the device; whether defendant retained any data about the hands of the putative class members; and the appropriate damages (if any) owed to each class member. Defendant also argued that the large amount of claimed damages rendered the case inappropriate for class treatment.

¶ 34    Plaintiff filed a reply, and defendant filed a surreply in further opposition to class certification.

¶ 35    The Court Grants Certification But Precludes Plaintiff's Daughter From Acting As
Class Counsel Due to a Conflict of Interest Detrimental to the Class

¶ 36    On May 24, 2024, the court orally issued its decision on the renewed motion for certification. In so doing, the court noted that it had reviewed the parties' submissions and did not believe oral arguments were necessary to make a determination.

¶ 37    The court noted that insofar as defendant's opposition attempted to argue the merits of the case, this was improper upon a motion for class certification. Thus, the court found it was not appropriate to address whether the HandKey device actually collected biometric information, whether defendant advised employees as to the collection of biometrics, or whether defendant had obtained employees' consent thereto. The court found that plaintiff alleged a claim susceptible to class treatment, insofar as he alleged that defendant "scanned his hand geometry through the hand

key device" and that defendant's employees "were aggrieved under BIPA" due to their alleged lack of written consent or a published retention policy.

¶ 38     The court found numerosity was met insofar as there were 879 proposed class members. The court then found that common questions "predominate" with respect to the claims. As to the claimed violation of section 15(a), it reasoned there were common issues as to whether biometrics were collected and stored and whether defendant published a retention policy. As to the section 15(b) claims, it reasoned there was a common question as to whether the HandKey device collected biometrics. Similarly, it found there was a common issue of whether defendant obtained sufficient informed consent "that biometrics were being collected."

¶ 39     The court then discussed whether the representative plaintiff and class counsel would fairly and adequately protect the interest of the class. The court noted it had reviewed plaintiff's deposition testimony and found he was an adequate class representative. It found he had a "serviceable understanding of the facts and legal theory of the case," as well as an understanding of his role as a class representative.

¶ 40     The court acknowledged plaintiff's testimony that he first saw the interrogatory responses approximately a week before his deposition. However, it noted that plaintiff was asked when he had seen the document, not whether he gave the answers that were included in the document.

¶ 41     The court also did not think it was significant that plaintiff referenced defendant taking his "fingerprints." The court found that "He understands the basics that he placed his hand on a machine that took his information he contends is his biometric information," and it was not material if he did not know the "particular biometric information it took." As plaintiff "clearly had an understanding of the legal wrong" underlying the lawsuit, any confusion on the specific details did not preclude him from serving as class representative.

¶ 42    The court then addressed the topic of conflict of interest. The court found that Chatman, plaintiff's daughter, "presents a conflict and is not going to be allowed to be class counsel." It found her "involvement as class counsel and her relationship to Mr. Brewer, who is her father, supports a finding of a conflict of interest where [Chatman] and Brewer might be incentivized to collude with respect to attorneys' fees."

¶ 43    The court noted that this case "contains only one class representative," plaintiff, such that "[t]he conflicts shared between [plaintiff] and [Chatman] would go unchecked by any other class representative." The court remarked it could "hypothesize a scenario where [plaintiff] declines a settlement offer that is in the best interest of the class members because of the conflicting interest in attorneys' fees" and this issue "is not able to be avoided simply by having more counsel as plaintiffs [*sic*] attempt to argue."

¶ 44    The court did not make any remarks as to whether any of the other class counsel—including attorney Wood, Chatman's colleague at the Community Lawyers firm—could adequately represent the class.

¶ 45    On May 24, 2024, the trial court entered a written order stating that plaintiff's renewed motion for class certification was granted "for the reasons stated on the record." The order also stated that "Attorney Celetha Chatman is not approved as class counsel."

¶ 46    On June 24, 2024, defendant filed a petition for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(8), which permits this court to allow interlocutory appeals "from an order of the circuit court denying or granting certification of a class action under section 2-802 of the Code of Civil Procedure (735 ILCS 5/2-802)." Ill. S. Ct. R. 306(a)(8) (eff. Oct. 1, 2020). This court granted the petition.

¶ 47                                    ANALYSIS

¶ 48          On appeal, defendant posits several reasons why the circuit court erred in granting plaintiff's renewed motion for class certification. Defendant primarily assert that the relationship between plaintiff and his daughter, Chatman (and her relationship with the other attorneys appearing as class counsel) creates a conflict of interest that disqualifies "all of Plaintiff's attorneys and prevents them from fairly and adequately representing the class."

¶ 49          Defendant otherwise asserts that plaintiff is an inappropriate class representative because he has "ceded control" to his daughter and her colleagues. Defendant urges that his deposition testimony demonstrated that he lacked sufficient understanding of the nature of the case or his role as class representative.

¶ 50          Defendant otherwise argues that individualized questions precluded class certification, and that the amount of the claimed damages rendered class treatment inappropriate. Finally, defendant argues that the class definition was overbroad, as it includes persons in management or human resources positions involved in implementation of the HandKey device, who are "critical to Pepperidge Farm's defense."

¶ 51          For the following reasons, we believe reversal and remand is warranted due to the trial court's failure to address whether the conflict of interest it identified as to Chatman (plaintiff's daughter) extends to the other law firms identified as counsel—including Chatman's sole colleague at the Community Lawyers firm, Wood. On the record before us, we are not convinced that the named counsel can adequately represent the class members without presenting the same risk of adversely affecting the class that the court identified with respect to Chatman. For similar reasons, we do not think that plaintiff can remain as the *sole* class representative.

¶ 52          A court must certify a proposed class in order for a plaintiff to proceed with a class-action lawsuit. *Bayeg v. Admiral at the Lake*, 2024 IL App (1st) 231141, ¶ 6 (citing 735 ILCS 5/2-

801 (West 2022)). Section 2-801 of the Code of Civil Procedure governs class certification and provides:

> "An action may be maintained as a class action in any court *** and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3) The representative parties will fairly and adequately protect the interest of the class.
>
> (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(West 2022).

¶ 53 "A party seeking class certification must fulfill four requirements: (1) numerosity ***, (2) common questions of law or fact that predominate over any individual issues, (3) the adequacy of the class representative, and (4) that class certification is an appropriate method to resolve the litigation." *Avery v. State Farm Mutual Automobile Ins. Co.*, 216 Ill. 2d 100, 125 (2005). The party seeking class certification must establish all four requirements. *Bayeg*, 2024 IL App (1st) 231141, ¶ 22.

¶ 54 "When only a motion for class certification is before the circuit court, the court must assume the merits of the plaintiff's claim and cannot conduct factual inquiry into that claim." *Id.*,

¶ 28. "However, in deciding a motion for class certification, the circuit court can engage in factual inquiry to resolve issues bearing on the section 2-801 requirements of numerosity, commonality, and predominance; adequacy of representation; and appropriateness." *Id*. ¶ 29.

¶ 55        "Decisions regarding class certification are within the sound discretion of the trial court and should be overturned only where the court clearly abused its discretion or applied impermissible legal criteria." *Avery*, 216 Ill. 2d at 125-26. "However, a trial court's discretion in deciding whether to certify a class action is not unlimited and is bounded by and must be exercised within the framework of the civil procedure rule governing class actions." (Internal quotation marks omitted). *Id*. at 126.

¶ 56        In this appeal, defendant raises challenges based on the second, third, and fourth requirements of section 2-801. We need not discuss them all, as we believe issues regarding the adequacy of class representation require reversal and remand. See 735 ILCS 5/2-801(3) (West 2022) (certification requires that the representative parties "will fairly and adequately protect the interest of the class.") Given the conflict of interest identified by the court stemming from the parental relationship between plaintiff and attorney Chatman, we do not find that the class will be adequately protected by the named class counsel. Similarly, we do not believe that plaintiff can adequately serve as the *only* class representative.

¶ 57        The court explicitly recognized the conflict presented by the fact that plaintiff (and sole class representative) is the father of Chatman, one of the attorneys who initiated the action. The trial court apparently believed that any risk to the class was resolved simply by precluding Chatman from serving as class counsel, without discussing the relationships between Chatman and the other attorneys named as class counsel.

We disagree. Given the identified conflict involving Chatman, we cannot say it was reasonable to permit her law partner at the Community Lawyers firm, Wood, to remain as class counsel. Further, we are troubled that the court failed to conduct an adequate factual inquiry to assess whether the other attorneys could remain as class counsel, given their relationships with Chatman. Thus, we find reversal and remand appropriate.

¶ 58    "The basic premise of the class action procedure is the fairness of having a proper representative act on behalf of the absent parties." *Lee v. Buth-Na-Bodhaige*, 2019 IL App (5th) 180033, ¶ 63. "The adequate representation requirement of section 2-801 ensures that class members receive proper, efficient, and appropriate protection of their interests." *Bayeg*, 2024 IL App (1st) 231141, ¶ 46 (citing *Gordon v. Boden*, 224 Ill. App. 3d 195, 203 (1991)).

¶ 59    "The test applied to determine adequacy of representation is whether the interests of those who are parties are the same as those who are not joined and whether the litigating parties fairly represent those not joined." *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981). "Class certification has frequently been denied because of the personal or business relationship between named class representatives and nonplaintiff class attorneys." *Schlenz v. Castle*, 84 Ill. 2d 196 (1981).

¶ 60    "The representation by the class representative must protect the due process rights of the class members." *Lee*, 2019 IL App (5th) 180033, ¶ 63. "The plaintiff's claim must not be antithetical to those of other class members, and plaintiff's interests must not appear collusive." *Id*.

¶ 61    Here, we conclude that certification was unreasonable given the risks to the class arising from the fact that the sole representative plaintiff is Chatman's father, as well as the relationships between Chatman and the attorneys appointed as class counsel. Although the trial court specifically barred Chatman from serving as class counsel, we still do not think certification was

reasonable. Our conclusion is based on: (1) the conflict of interest *explicitly recognized by the trial court* in barring Chatman from serving as class counsel; (2) plaintiff's deposition testimony indicating the action was largely inspired by his daughter and that his daughter continued to represent him, and (3) other evidence and publicly available information suggesting that Chatman has close professional relationships with at least two of the other attorneys named as class counsel.

¶ 62    Significantly, the court explicitly and correctly recognized that the continued involvement of plaintiff's daughter as class counsel posed a conflict of interest that might harm unrepresented class members. It hypothesized that plaintiff (Chatman's father) might decline a settlement offer that would otherwise be in the best interest of the class members, because of an interest in maximizing attorneys' fees for class counsel, including his daughter. In recognition of this conflict, it precluded Chatman from serving as class counsel. Yet, the court nevertheless permitted Chatman's colleague at the Community Lawyers firm (Wood), to remain as class counsel. In its oral ruling, the court simply did not mention Wood or the Community Lawyers firm. This is surprising and troubling, especially since it appears that Chatman and Wood may be the *only two lawyers* at that firm. We take notice that the website for the firm contains only two attorney profiles: Chatman and Wood. See https://communitylawyersgroup.com/about-us (last visited Aug. 8, 2025).

¶ 63    Generally, one attorney's conflicts of interest are imputed to the other attorneys associated in a firm. See Ill. R. Prof'l Conduct 1.10 (eff. Jan. 1, 2010) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm."). Comment 2 to Rule 1.10

recognizes it stems from "the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client" and that "each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." *Id*., Comment 2 (effective Jan. 1, 2010).

¶ 64     In light of this principle, it appears that the trial court's finding of a conflict of interest barring Chatman as class counsel should have also applied to her firm, Community Lawyers, and her colleague at the firm, Wood. This is especially the case since it appears that Chatman and Wood are the *only* lawyers at the firm and, presumably, work closely together.  While we recognize the trial court precluded Chatman while allowing Wood to serve as class counsel, this appears to be a distinction without a difference. As a practical matter, it is difficult to imagine that (absent some directive from the court) Chatman would not discuss the case with Wood, even if Chatman did not formally appear.

¶ 65     More important, it is hard to believe that simply precluding Chatman from serving as class counsel (without precluding her firm) resolves the concern identified by the court—that plaintiff might be tempted to accept a settlement that is otherwise detrimental to the class members because it will benefit Chatman, his daughter. It is implausible to think that plaintiff and his daughter would not discuss the case, even if she is not formally appearing as his counsel.

¶ 66     And it is quite reasonable to expect that, in the event of a settlement offer, plaintiff would consult with his daughter, Chatman (a lawyer), as to the wisdom of accepting it. This is especially so since plaintiff testified that it was his daughter who first advised him that defendant's conduct might be illegal. The potential for conflict is obvious: plaintiff might feel persuaded to accept a lower settlement in order to obtain a benefit for his daughter's firm, even if the interests of other class members could be better served by holding out for a larger settlement. We again note that

since plaintiff is the *only* named class representative, this concern is not ameliorated by the presence of one or more non-related plaintiffs who might not be susceptible to the same influence.

¶ 67     While our main reason for concern is the father-daughter relationship between plaintiff and Chatman, we are also given pause by the fact that the Northern District of Illinois has seen fit to admonish Chatman and Wood for questionable conduct. See *Irvin v. Nationwide Credit & Collection, Inc*., No. 18 C 2945, 2020 WL 291366 (Jan. 21, 2020) ("Plaintiff's counsel, Celetha Chatman and Michael Wood, have been admonished and warned repeatedly by this and other courts in this and other districts concerning their misconduct in fabricating FDCPA [Fair Debt Collection Practices Act] cases for the purpose of collecting attorney's fees. Should that conduct occur in the future, this court will not hesitate to impose severe sanctions on these lawyers.").

¶ 68     Thus, at the very least, it was unreasonable for the court to allow Community Lawyers and Wood to remain as class counsel, given their working relationship with Chatman, plaintiff's daughter. So long as they remain as class counsel, we believe there is an undue risk that the other class members may not be adequately represented by plaintiff, Chatman's father. This is especially the case, since he is the sole class representative. We do not believe plaintiff can serve as an adequate representative for other class members, at least so long as Chatman's firm and colleague remain class counsel. This alone gives us reason to reverse.

¶ 69     We also believe the court failed to make adequate inquiries into similar concerns with respect to another attorney identified as class counsel, attorney Drew of Neighborhood Legal. It seems clear that Drew has had a close working relationship with Chatman and the Community Lawyers firm for several years. Drew clerked with the firm for more than two years before his 2019 graduation from law school. Further, as noted in defendant's brief, Drew and Community Lawyers have acted as co-counsel in a number of class actions in federal court.  We recognize (as

plaintiff's brief emphasizes) that Drew is not currently employed by Chatman's firm, and so Illinois Rule of Professional Conduct 1.10 does not apply to automatically impute Chatman's conflict to him. Nonetheless, we are troubled by the fact that the trial court did not engage in any questioning or make any comments about the potential conflict that could arise due to Drew's relationship with Chatman.

¶ 70        We also find it notable, as defendant's brief points out, that Drew has acted as Chatman's *personal attorney* in multiple putative class actions naming Chatman as plaintiff. See, e.g., *Chatman v. Miramed Revenue Group*, No. 20-cv-05759 (N.D. Ill.) (alleging violations of the federal Telephone Consumer Protection Act and Fair Debt Collection Practices Act (FDCPA)); *Chatman v. Presence Chicago Hospital Network et al*., No. 1:21-cv-00831 (N.D. Ill.) (FDCPA); *Chatman v. CYS Group, Inc. et al*., No. 1:19-cv-08401 (Telephone Consumer Protection Act).

¶ 71        Under these circumstances, it is reasonable to surmise that the same ethical concerns about Chatman's law firm colleague might also apply to Drew. Although Drew is technically not employed by Community Lawyers, it is reasonable to infer he has a similar interest in maximizing attorneys' fees. Given Drew's longstanding relationship with plaintiff's daughter, this could also compromise plaintiff's ability to adequately represent the interests of other class members. That is, it is foreseeable that plaintiff might feel tempted to agree to a settlement that would benefit his attorneys (especially his daughter's longstanding colleagues), even if the settlement was not in the best interest of the broader class.

¶ 72        We recognize that a third firm—Williams Barber—was also named as class counsel. Unlike the other named counsel, there is little in the record regarding the extent of Chatman's relationship with that firm. Defendant notes that Chatman and attorney Brown from the Williams Barber firm "have jointly pursued at least one other putative class action" filed in the name of

Chatman's father, plaintiff herein. See *Brewer v. Law Offices of Mitchell D. Blum & Associates,* No. 21 C 294, 2021 WL 5140476 (Nov. 4, 2021) (granting motion to dismiss action alleging violation of FDCPA because part of plaintiff's account number was visible through address window on debt collection letter). Without more information, we cannot say that Williams Barber could not adequately serve as class counsel. In any event, we are also not convinced that their presence would necessarily cure the previously discussed concerns with the other named class counsel. Indeed, as the trial court said in reference to Chatman, the issue "is not able to be avoided simply by having more counsel."

¶ 73                                    Plaintiff Should Not Be the Sole Class Representative

¶ 74        The concerns discussed above with respect to class counsel also lead us to the conclusion that plaintiff cannot adequately serve as the sole class representative. Given the information regarding the relationships between plaintiff's daughter, Chatman, and the certified class counsel, we have little confidence that plaintiff (as a sole class representative) can fairly and adequately protect the interests of the over 800 additional putative class members. In our view, whether or not Chatman is formally involved as counsel, there is an undue risk that plaintiff will rely on her in making decisions as to settlement, especially given her legal experience and relationships with named class counsel. In this regard, we again point out plaintiff's deposition testimony suggested that Chatman was the first to advise him that defendant's conduct could be the basis for a lawsuit, and that he considered her to be one of his attorneys in this case. Even without any explicit advice from Chatman, plaintiff might feel pressured to settle sooner, under the belief that it will benefit his daughter or her colleagues. Whether intended or not, this could very well influence plaintiff (if acting alone) to enter into a settlement that is not in the long-term interests of the broader class.

¶ 75 For these reasons, we do not find that plaintiff can be a proper sole representative. We recognize that generally, "an inadequate representative may be removed and leave may be granted to the plaintiffs to seek a substitute representative who adequately represents the class." See *Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 779 (2008) (reasoning that even if one of the named plaintiffs was not an adequate representative, this did not destroy the adequacy of the remaining named plaintiffs). However, we do not think plaintiff's removal is necessarily warranted here. We believe the concerns discussed above can be ameliorated through the addition of one (or more) representative plaintiffs who lack a conflict of interest. On remand, the trial court should direct the plaintiff to propose additional representative plaintiffs. Of course, the trial court can and should engage in factual inquiry to determine which particular plaintiffs (and how many of them) will fairly and adequately represent the remaining class, in accordance with section 2-801 of the Code. See 735 ILCS 5/2-801(3) (West 2022).

¶ 76 To be clear, we are not making any finding of any improper motive on the part of plaintiff, Chatman, or any other attorney. However, once the trial court explicitly and correctly recognized that it was not appropriate for Chatman (plaintiff's daughter) to serve as counsel, it was unreasonable for it to conclude that Wood of Community Lawyers (Chatman's firm) and other class counsel were appropriate, at least without making explicit findings as to those attorneys. Further, it was not reasonable under these circumstances to permit plaintiff to remain as the sole class representative.

¶ 77 We thus remand for further proceedings. We instruct the court to make specific findings as to whether it believes that any of the named class counsel—including (1) attorney Wood of Community Lawyers, (2) attorney Drew of the Neighborhood Legal firm, and (3) the Williams Barber firm—can adequately represent the class. Further, the trial court should instruct plaintiff to

propose one or more additional representative plaintiffs, and the trial court should make findings as to whether such plaintiffs are adequate class representatives. We encourage the trial court to invite further submissions from the parties, to hold additional hearings, and make whatever inquiries it deems helpful to determine which counsel and representative plaintiffs will ensure the putative class is fairly and properly represented.

¶ 78        As we reverse and remand on this basis, we need not address defendant's remaining arguments on appeal. Thus, we make no decision as to whether plaintiff's deposition showed he lacked sufficient knowledge to serve as class representative, whether individualized questions precluded class certification, whether the claimed damages rendered class treatment inappropriate, or whether the class definition was overbroad.

¶ 79        Finally, although not specifically argued by the parties, we note that the class definition approved by the trial court did not explicitly limit class members to those who used the HandKey device *without giving informed written consent*, which is crucial to establishing a violation of section 15(b) of BIPA. See 740 ILCS 14/15(b) (West 2024) (no private entity may obtain a person's biometric identifier or biometric information unless it informs the subject or the subject's legally authorized representative and receives a corresponding written release). We recognize that the parties dispute whether defendant complied with this BIPA provision, and it is premature to decide that question on the merits with respect to any particular user. However, on remand we believe the class definition should be narrowed to encompass only those users whose alleged use of the HandKey device actually constituted a BIPA violation.

¶ 80                                    CONCLUSION

¶ 81        For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings consistent with this order.

¶ 82        Reversed and remanded.